**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TECHNOLINES, LP and<br>ECHELON LASER SYSTEMS, L.P.,<br><br>        Plaintiffs,<br><br>    v.<br><br>GST AUTOLEATHER, INC.,<br><br>        Defendant. | Civil Action No. 11 CV-00965<br><br>Judge John F. Grady<br><br>Magistrate Judge Arlander Keys |

**BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR FOR CHANGE OF VENUE**
**PURSUANT TO F.R.C.P. 12(a)(4) and (b), 28 U.S.C. §1391 AND 28 U.S.C. §1404**

### I.  PRELIMINARY STATEMENT

As set forth in the Motion, this is seven-count Complaint.[1]  The Complaint alleges infringement of a variety of different patents.  Paragraph 7 of the Complaint correctly states that Defendant sells leather for use in automotive interiors.  However, Defendant GST AutoLeather, Inc. (hereinafter referred to as "GST") does not sell to the general public, but rather only to automotive manufacturers and specifically, in this instance, to Chrysler Corporation, headquartered in Auburn Hills, Michigan.[2]

Despite the complicated nature of this Complaint, Plaintiffs' counsel has taken the unusual approach of refusing to grant an extension of any time.  In response to Defendants' request for an extension, Plaintiffs' counsel, by e-mail dated March 3, 2011, provides the following curt explanation:

---

[1]  Plaintiff mis-numbers the Complaint, using two Counts V.
[2]  See www.gstautoleather.com.  "GST AutoLeather, formerly Garden State Tanning, has a 60 year tradition providing services to the **automotive industry**."  (Emphasis added).

> Larry - I have discussed GST's request for a 45 day extension with my
> client and they will not agree to an extension.

(*See* Ex. A.)  It is customary and usual to grant at least some form of extension and, further, to advise clients that offering such a courtesy to opposing counsel is proper.  Unfortunately, Plaintiffs' counsel either did not abide by that professionalism, or was unable to convince their client that such professionalism and courtesy is appropriate.  Perhaps this approach was to avoid having to deal with a Motion For Change of Venue, especially when it is apparent to all concerned that there is a lack of contact by Defendant with this District.  Defendant respectfully requests that it be allowed to amend its motions and pleadings as it conducts further investigation and determines the facts that are pertinent and important for the Court to hear.

## II.  STATEMENT OF FACTS

Defendant GST AutoLeather, Inc. ("GST") is a Delaware corporation with its principal place of business located in Southfield, Michigan.  (Ex. E at ¶ 3-4 (Affidavit of Stephen Jeske)).  GST is a manufacturer of cut leather for automotive applications.  (*Id.*)  GST does not have offices, nor does it pay taxes, sell products or do business in the State of Illinois.  (*Id.*)

In 2005, GST hired Plaintiff TechnoLines LP ("TechnoLines") to begin manufacturing prototypes of laser etched leather for various automotive applications.  (*Id.* at ¶ 5).  TechnoLines is a Delaware limited partnership with its principal place of business in Westlake, Ohio.  (D.E. 1 at ¶ 5).  GST purchased prototypes from TechnoLines' Ohio facility.  (Ex. E at ¶ 5).  The prototypes were based on specifications provided exclusively by GST.  (*Id.*)  TechnoLines manufactured those prototypes exclusively in the State of Ohio.  (*Id.*)  GST never at any time conducted any business with TechnoLines in the State of Illinois.  (*Id.*)

On July 5, 2005, GST and TechnoLines executed a Mutual Non-Disclosure Agreement ("NDA").  (Ex. B).  The terms of the NDA between GST and TechnoLines were negotiated

exclusively in Michigan and Ohio and all business conducted between GST and TechnoLines took place exclusively in Michigan and Ohio.  (Ex. E. at ¶ 6).

In 2009, GST approached TechnoLines regarding the manufacture of laser etched leather seats for the Dodge Laramie Ram Truck (the "Dodge Project").  (*Id.* at ¶ 7).  On or about December 14, 2009, TechnoLines indicated that they were unwilling and unable to manufacture laser etched leather for the Dodge Project during regular production, and at the same time, informed GST that in order for GST to etch leather for the Dodge Project that GST would have to enter into licensing and royalty agreement with a company called Echelon Laser Systems, LP ("Echelon") and purchase a laser machine from a Minnesota company called Lasx.  (*Id*).

Until this time, GST was unaware of the existence of Echelon.  (*Id.* at ¶ 8).  Echelon is a Delaware limited partnership that was formed July 23, 2008 (*see* Ex. C (Echelon Corporate Registration), over three years after GST and TechnoLines entered the NDA.  Echelon's headquarters are located in Tampa, Florida (D.E. 1 at ¶ 5) and it maintains a registered agent in Illinois outside of the Northern District of Illinois.  (*See* Ex. D (Echenlon Illinois Corporate Registration)).  Never at any time did GST do any business with or enter into any contract with Echelon or Masonite Corporation for the provision of any good or service.  (Ex. E. at ¶ 9).  Plaintiffs have not and will not be able to provide documentation or evidence of any contractual agreement between GST and Echelon or Masonite Corporation.

## III.  ARGUMENT

### A. The Court Should Dismiss Plaintiffs' Complaint Because Venue Is Improper Pursuant to 28 U.S.C. §§ 1400 and 1391.

In paragraph 2 of the Complaint, Plaintiffs allege that this Court has subject matter jurisdiction over the patent claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338 and has supplemental jurisdictions over the Trade Secret Misappropriation, Breach of Contract and

Unjust Enrichment claims pursuant to 28 U.S.C. §1367. Therefore, the appropriate venue statute is 28 U.S.C. §1400. The patent venue provision specifies that an action may only be brought in a district in which "the defendant resides, or where the defendant has committed acts of infringement and *has a regular and established place of business*." 28 U.S.C. §1400(b) (emphasis added). GST does not reside, not does it do business in Illinois, therefore Plaintiffs' complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

With respect to whether a defendant meets the "resides" or "established place of business" aspects of the patent venue statutes, the Federal Circuit has determined that the patent venue provision should be read in light of the general venue statute, 28 U.S.C. §1391. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1580 (Fed. Cir. 1990); *see also* 28 U.S.C. §1391 (c) (" a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced").

Whether the court has personal jurisdiction is based on traditional principles whereby a defendant purposely avails itself of the privilege of conducting activities in the forum, and has minimum contacts that sufficiently comport with fairness and justice. *See International Shoe Co. v Washington*, 326 U.S. 310 (1945). This circuit requires an analysis of the state's long arm statute and a determination if Illinois could exercise personal jurisdiction over this corporate defendant. *Central States Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). In order for personal jurisdiction to be proper, a defendant must have purposely established minimum contact with the forum. *See Burger King Corp. v Rudzewicz*, 471 U.S. 462, 474-476 (1985); *RAR, Inc. v Turner Diesel Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction. *Burger King*, 471 U.S. at 474.

4

The crucial inquiry is whether the defendant's conduct in connection with the forum is such that it should reasonably anticipate being hailed into court. *Id.; RAR, Inc.*, 107 F.3d at 1277.  To establish such a reasonable anticipation, the defendant must have purposely availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75.  Once minimum contacts have been shown to exist, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476-77.  To exercise specific personal jurisdiction, the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, (1984)

While it is clear, based on the recitation of facts above such minimum contacts do not exist, even if minimum contacts had been shown "a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476-77.

Regardless, it is mandatory that for personal jurisdiction to exist, the Plaintiffs' cause of action must have arisen out of or be related to these minimum contacts and that such relation must be to an extent that sufficiently comports with fairness and justice. *See Helicopteros*, 466 U.S. at 414.  Plaintiffs have the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc.*, 107 F.3d at 1276.  In *OCTU-Employer Retirement Fund v The Goldfarb Corp.*, 565 F.3d 1018 (7th Cir. 2009), the court succinctly stated a three-step analysis that must be completed to determine whether personal jurisdiction exists:

To decide whether specific personal jurisdiction may be exercised, a court must engage in three distinct steps: (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet Constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arose out of or are related to the causes of action involved in the suit.

**1.      GST Has No Contacts With Illinois.**

A review of Plaintiffs' Complaint and the Statement of Facts therein is instructive on Defendant's contacts, or lack thereof, with the State of Illinois. Most glaring is the absence of any alleged facts which would support any contacts GST has in this District. Rather, the Complaint clearly supports the proposition that any contact of any significance occurred at Defendant's location in Livonia, Michigan, or at TechnoLines' location in Westlake, Ohio. To that end, the Complaint clearly establishes that the facts that give rise to this lawsuit all occurred in southern Michigan or northern Ohio.

First, the Complaint notes that "TechnoLines is a Delaware limited partnership with a principal place of business in Westlake, Ohio." (D.E. 1 at ¶ 5). Next, it alleges that "[o]n July 5, 2005 Defendant and TechnoLines entered into a mutual nondisclosure agreement." (*Id.* at ¶ 13). The nondisclosure agreement is attached to the Complaint as Exhibit E and states that it "shall be governed by and construed in accordance with the laws of the State of Delaware." (D.I. 1-8 at 4). Illinois is never mentioned.

Paragraph 14 of the complaint alleges that "[d]uring the course of this relationship, Defendant has visited TechnoLines **headquarters** on several occasions. While at TechnoLines **headquarters**, Defendant observed TechnoLines' extensive patent portfolio, copies of which are on display in TechnoLines' conference room." (Emphasis added). Again, as identified by Plaintiffs themselves, that headquarters was located in Westlake, Ohio. Paragraph 15 of the

6

complaint alleges that "[i]n mid-2009, Defendant sent TechnoLines some proposed images for a new Dodge Ram Laramie Longhorn truck interior." Paragraph 16 alleges that "TechnoLines repeatedly provided Defendant with whatever samples, revisions and modifications it needed, often on an expedited basis." In paragraph 22, Plaintiffs allege that "Defendant sent personnel from its plant in Mexico to observe the laser edging process at TechnoLines' facility. Defendant also visited TechnoLines' facility on a separate occasion to videotape the laser scribing process. In addition, Defendant sent several representatives to the TechnoLines facility to observe the laser etching process that Defendant was to implement at its own plant." To put these and other allegations in context, people, materials and communications were sent between TechnoLines in Westlake, Ohio and Defendant in Livonia, Michigan. Nothing occurred in Illinois.[3]

The allegations of the Plaintiffs' Complaint are consistent with Defendant's Statement of Facts set forth above, and the Affidavit in support of this Motion. GST was simply unaware of the existence of Echelon until informed by TechnoLines in December, 2009 that an agreement would have to be entered into with Echelon. Until that time, GST believed it would be purchasing machinery, services or equipment from TechnoLines, a company which Plaintiff admits is located in Westlake, Ohio. In fact, the only known representative of Echelon, Henry Coghlan, had been held out to be a representative of TechnoLines. Clearly, courts are not in favor of use of such trickery to cause a defendant to be subject to the jurisdiction of a forum chosen by plaintiffs.

---

[3] Plaintiffs' complaint also alleges that "Defendant used the samples provided by TechnoLines to secure an order from Dodge." (D.E. 1 at ¶ 17.) Dodge appears to ostensibly be Chrysler Corporation headquartered in Auburn Hills, Michigan – also not in Illinois.

2. **Because GST Has No Contacts In Illinois It Does Not Meet Constitutional Minimums For Personal Judisdiction.**

Based on the facts set forth by both parties, it is clear that GST was under the impression, and had been led to believe, that it was involved in a transaction with TechnoLines, a company located in Westlake, Ohio. In fact, the only executed document between the parties, the Nondisclosure Agreement, is only between GST and TechnoLines. Echelon is not a party to that agreement. The first paragraph of the agreement reflects that TechnoLines is located in Westlake, Ohio and that GST is located in Southfield, Michigan. The agreement is interpreted according to the laws of the State of Delaware. At the time of execution of the agreement, July, 2005, GST, by all accounts, was not even aware of the existence of Echelon. Clearly then, there is no purposeful availment of the benefits of the jurisdiction, because GST was not even aware that there was any party involved that had any contact to the Northern District of Illinois. Principles of "fairness and justice" prohibits the use of such trickery to inadvertently cause a party to be subject to a jurisdiction that it was unaware of. *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) ("The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation."). Contacts clearly are not sufficient to meet the minimum contact requirement of the U.S. Constitution and this State's long arm statute.

3. **No Contacts Arise Out Of Or Relate To The Cause Of Action.**

Based on the allegations in the Complaint, Plaintiffs' claims are based on allegations that GST videotaped processes and obtained certain trade secrets while at TechnoLines headquarters in Ohio. This is contrary to any plausible argument then, that the cause of action, the complained of acts, and the minimum contacts are in any way inter-related.

8

As set forth above, the only real contact of any significance with this District is that Plaintiffs' counsel is located in it. The refusal to grant an extension of time to answer such a complicated Complaint is most likely predicated on the hopes that Defendant will inadvertently submit to the jurisdiction of this Court. The analysis as required by the Seventh Circuit, and as set forth above, clearly mandate that the matter be dismissed because venue in this District is not proper.

**B.     Transfer of Venue Pursuant to 28 U.S.C. §1404.**

Even if the Court were to find venue proper under the patent venue statute, the Court should nevertheless transfer this matter to a more convenient jurisdiction. Pursuant to 28 U.S.C. §1404(a), a district court may transfer a case to any other district where such case might have been brought if: "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice". *Methode Electronics, Inc. v Delphi Automotive Systems, LLC*, 639 F.Supp. 2d 903, 907 (N.D. Ill. 2009). Transfer of venue is a decision within the discretion of the trial judge on a case to case basis. *Technical Concepts, LP v. Zurn Indus., Inc.*, No. 02C5150, 2002 WL 31433408, at *2 (N.D. Ill. Oct. 31, 2002).

Based on the facts of this case it is proper for this Court to transfer the matter to the Southeastern District of Michigan for the following reasons: (1) venue is proper in the Southeastern District of Michigan; and (2) such transfer is for the convenience of the witnesses and serves the interest of justice.

**1.     The Southeastern District of Michigan Is A Venue Where The Action Could and Should Have Been Brought.**

The action could have been brought in the United States District Court for the Southeastern District of Michigan, since GST's principal place of business is located in that

District, GST regularly conducts business and owns property in Michigan and is subject to personal jurisdiction there. Venue is proper in a matter involving a federal question against a corporation where the corporation is subject to personal jurisdiction. 28 U.S.C. §1391.

## 2. The Southeastern District of Michigan Is A More Convenient Location For the Parties and Witnesses.

In determining whether a transfer of venue would be proper for the convenience of parties and witnesses, courts in the Seventh Circuit consider the following factors: "(1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of witnesses". *Methode Electronics*, 639 F. Supp. at 907.

As discussed in more detail below, because the cumulative effect of these factors weighs in favor of transfer, the Court should transfer this action to the Southeastern District of Michigan.

### a. Echelon's Choice of Forum is Entitled to Only Nominal Weight.

Plaintiff's choice of forum is given weight in determining whether to transfer venue, but "deference to the plaintiff's choice of forum should be minimized where it is not the situs of material events". *Cooper Bauck Corp. v Dolby Labs., Inc.*, No. 05 C 7063, 2006 WL 1735282, at *4 (N.D. Ill. June 19, 2006). In patent infringement actions, the situs of material events is where the defendant has its personal place of business. *Id.* at 5 (granting motion to transfer venue in a patent infringement action finding because the situs of material events lay predominantly where the defendant had its principal place of business, the plaintiff's chosen forum weight only slightly against transfer). Furthermore, when the forum lacks significant contact with the underlying cause of action, the plaintiff's choice of forum holds even less weight in the transfer analysis. *Technical Concepts, LP*, 2002 WL 31433408, at *3 (granting motion that transfer venue in a patent infringement action finding plaintiff's chosen forum had

10

only a tenuous connection to the claim despite being plaintiff's home forum in a place where the allegedly infringing product was sold). In this matter, the factor is heavily mitigated since only one plaintiff, Echelon, appears to be selecting the District while the other plaintiff, TechnoLines, is in northern Ohio. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed.Cir.2008) (issuing mandamus to transfer patent case out of the Eastern District of Texas where all identified witnesses and evidence were located in alternative venue). Furthermore, it is very important for the Court to note that even Echelon's registered office is not in the Northern District of Illinois. *See* Ex. C.

Because the situs of all material events lies predominantly in the Southeastern District of Michigan, and because the Northern District of Illinois lacks significant contact with the alleged patents, TechnoLines' choice of forum should not be given any weight against transfer, and should not preclude transfer.

> **b.      The Situs of Material Events Strongly Weighs In Favor of Transfer.**

"[I]n patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than those of the plaintiff." *Cooper Bauck*, 2006 WL 1735282 at *5 (granting motion to transfer and finding the situs of material events occurred in the defendant's principal place of business, the location in which the accused infringing technology was researched, developed, patented, tested, marketed and licensed); *Anchor Wall Systems, Inc. v R&D Concrete Products, Inc.*, 55 F.Supp. 2d 871, 873 (N.D. Ill. 1999) (granting motion to transfer patent infringement action finding a majority of the operative facts surrounding the infringement occurred in the transferee district, where the defendant designed, manufactured, stored and sold the allegedly infringing product). Similarly

in the Misappropriation of Trade Secrets, Breach of Contract, and Unjust Enrichment counts, the Defendant's principal place of business should be the critical and controlling consideration because the factual issues focus solely on the Defendant's activities and business and, specifically, the use of the technology for the production of seats to be sold by Chrysler Corporation, also located in the Southeastern District of Michigan.

Even a cursory review of Plaintiffs' Complaint establishes that the alleged activities of GST occurred in connection with the production of leather to be used on the Dodge Ram. As recited in Plaintiffs' Complaint, and referenced above, all pertinent activities took place either at Defendant's location in Michigan, or at the TechnoLines facility in Westlake, Ohio. Regardless, Plaintiffs' position is that Defendant has infringed on one or more of its patents by making, using, importing and selling products covered by one of the patents. Particularly, through its manufacture of laser scribed leather for "Dodge Ram Laramie Longhorn trucks". To establish such a claim, Plaintiffs will be required to spend significant time in southeastern Michigan at Defendant's facility, Johnson Controls, and Chrysler Corporation.

Transfer to the Southeastern District of Michigan is also proper because "sales alone are insufficient to establish a substantial connection to the forum if the goods are sold in many states". *Cooper Bauck*, 2006 WL 1735282 at *5; *Technical Concepts*, 2002 WL 31433408 at *3. Accordingly, because the Dodge Ram Laramie Longhorn truck is sold in every state of the Union, including Illinois, Illinois does not have a substantial connection to the operative facts and transfer to the Southeastern District of Michigan should be granted.

     **c.**    **The Southeastern District of Michigan Allows For Greater Ease of Access to Documents and Sources of Proof.**

"Because this is a patent case, more focus is placed on the location of Defendant's activities, employees and facilities." *Cooper Bauck*, 2006 WL 1735282, at *6. Furthermore,

because of the manufacturing nature of this product, and the claim that the patent was infringed by use of patented process[es] in southeastern Michigan, clearly the most time will be spent in that District. The City of Detroit acquired the nickname "Motor City" because of the heavy influence and domination of the automobile industry in that District. The four corners of Plaintiffs' claim, even though greatly disputed by Defendant, clearly indicates heavy reliance on documents, witnesses, manufacturing facilities, machinery and automobiles located in the Southeastern District of Michigan.

### d. The Convenience of the Parties Weighs In Favor of Transfer.

When one party will be inconvenienced regardless of the forum, this factor is considered neutral in the court's determination as to whether to transfer venue. *Cooper Bauck*, 2006 WL 1735282, at *6; *see also In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). In this case, the opposite is true. It is more convenient for both Plaintiff TechnoLines and Defendant GST to have the matter heard in the Southeastern District of Michigan. The factual statements of the Complaint clearly negate that all of the activity took place at either GST's location in southeastern Michigan, and TechnoLines' location in Ohio. Virtually all of the witnesses will also be located in either location. The corporate officers, engineers, and directors of both GST and TechnoLines are paramount to this case. Thus, it does not make sense to inconvenience a great number of the parties' employees in order to convenience a very small number. *In re Genentech, Inc.,* 566 F.3d at 1345.

### e. The Convenience of the Witnesses Weighs In Favor Transfer.

The convenience of the witness is "often viewed as the most important factor in the transfer analysis". *Anchor Wall Systems*, 55 F.Supp. 2d at 874. "When considering this factor, the number of witnesses located in each forum and the importance of their testimony must be

considered." *Technical Concepts*, 2002 WL 31433408, at *4. "The party seeking the transfer must specify the key witnesses to be called and make a generalized statement of what their testimony would include." *Cooper Bauck*, 2006 WL 1735282 at *6. GST is not aware of any fact witnesses who reside in the Northern District of Illinois. Virtually all of the witnesses are located in the Southeastern District of Michigan, either at Defendant's facility, Johnson Controls, or Chrysler Corporation, and additionally located in northern Ohio at Plaintiff TechnoLines' location. *See In re Microsoft Corp.*, 630 F.3d at 1364 (transferring when plaintiff's choice would "require witnesses to undergo the cost, time, and expense of travel to attend trial, which would be significantly minimized if this case were transferred"). It is without any doubt that, should this matter proceed to trial, it would cause great inconvenience for all of those witnesses, expected to be numerous, to have to travel to Illinois to stay in hotels for the purpose of testifying in this matter.

### f.    Transfer Is In the Interest of Justice.

In determining whether transfer is proper in the interest of justice, courts in the Seventh Circuit consider the following factors: (1) the court's familiarity with the applicable law; (2) the speed at which the case will proceed to trial; and (3) the desirability of resolving controversies in a particular locale. *Methode Electronics*, 639 F. Supp. 2d at 907.

First, courts in the Seventh Circuit have held that, because patent infringement is a question of federal law, all federal courts are "equally well equipped to accommodate patent infringement cases". *Cooper Bauck*, 2006 WL 1735282 at *6; *Gen 17, Inc. v Sun Microsystems, Inc.*, 953 F. Supp. 240, 243 (N.D. Ill. 1997). Additionally, the misappropriation of trade secrets count is also a matter of federal law and each District Court is equally competent to hear these

matters. Therefore, this factor weighs neither in favor nor against transfer, and should not preclude a transfer of venue in this action.

Second, there is little difference between Districts as far as the speed of hearing these matters. Consequently, this factor should be considered neutral in the transfer analysis.

Finally, the federal courts desire to resolve litigate controversies in their locale. *Cooper Bauck*, 2006 WL 1735282 at *7. "Where an accused product is distributed and sold throughout the United States, 'several states . . . share [and] interests in redressing the alleged infringement'". *Id.* When the action has no significant connection to the plaintiff's chosen forum, however, the interest of justice would be better served by transferring the action to the forum where the situs of material events occurred. *Anchor Wall Systems*, 55 F.Supp. 2d at 875.

Based on the foregoing, this matter should be transferred to the Southeastern District of Michigan because the material events involved in the litigation occurred there. Therefore, this factor weighs strongly in favor of transfer to the Southeastern District of Michigan, or alternatively, to the Northern District of Ohio.

## IV. CONCLUSION

For all of the reasons set forth above, GST's Motion To Dismiss and/or For Change Of Venue Pursuant To 28 U.S.C. §1391 And 28 U.S.C. §1404 should be granted. If the Court were to determine that a transfer of venue is appropriate, then such matter should be transferred to the Southeastern District of Michigan.

Respectfully submitted,

HUSCH BLACKWELL, LLP

By: /s/John A. Sholar
    John A. Sholar, Jr.
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
Attorneys for Defendant

Dated:  March 8, 2011

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that a copy of the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS AND/OR FOR CHANGE OF VENUE PURSUANT TO F.R.C.P. 12(a)(4) and (b), 28 U.S.C. §1391 AND 28 U.S.C. §1404 was filed with the Clerk of the Court and served upon the parties of record, *via ECF*, on March 8, 2011.


Dated: March 8, 2011


_____ /s/  John A. Sholar, Jr._____
                John A. Sholar, Jr.