## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| TECHNOLINES, LP and ECHELON LASER SYSTEMS, LP, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11 C 965 |
| GST AUTOLEATHER, INC., | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court is defendant GST AutoLeather, Inc.'s ("GST") motion to dismiss plaintiffs' complaint or, in the alternative, transfer this case to the Eastern District of Michigan. For the reasons explained below, we grant GST's motion and dismiss plaintiffs' complaint without prejudice.

### BACKGROUND

Plaintiff Echelon Laser Systems, LP ("Echelon"), a Delaware limited partnership, is a joint venture between plaintiff TechnoLines, LP and Masonite Corporation. (Compl. ¶ 5.) TechnoLines is a Delaware limited partnership with its principal place of business in Westlake, Ohio; Masonite is a Delaware corporation with its principal place of business in Tampa, Florida, and its "principal research and development facility" in West Chicago, Illinois. (Id.) TechnoLines and Masonite formed Echelon

"to find ways to further develop, promote, and commercialize" TechnoLines' laser-etching technology, (Coghlan Decl. ¶ 2.), which is used to etch "patterns and effects onto a wide range of materials, including fabrics and leather." (Compl. at ¶ 6.) This technology is covered by four patents, which the USPTO issued to TechnoLines' CEO, Darryl Costin. (Compl. ¶¶ 9, 30, 40, and 45.) Costin assigned the patents to TechnoLines, and TechnoLines has granted Echelon the right to sue for their infringement. (Id. at ¶¶ 30, 40, and 45.)

Defendant GST, a Delaware corporation with its principal place of business in Southfield, Michigan, "sells leather for use in automotive interiors for distribution throughout the United States, including this District." (Id. at ¶ 7.) TechnoLines and GST began working together in 2004, with the goal of selling leather etched with TechnoLines' technology to automotive companies. (Id. at ¶ 11.) The parties memorialized their relationship in a Mutual Non-Disclosure Agreement, dated July 5, 2005. (Id. at ¶ 13.) Among other things, this agreement required GST to use TechnoLines' confidential and proprietary information solely in connection with the parties' joint business relationship. (Id.) In mid-2009, GST sent TechnoLines proposed images for a new Dodge Ram "Laramie Longhorn" truck interior. (Id. at ¶ 15.) TechnoLines converted "these image files to an electronic format that could be used with a laser scribing system," suggested modifications and improvements,

and prepared "samples." (Id. at ¶¶ 15-16.) TechnoLines alleges "[o]n information and belief" that GST used these samples "to secure an order from Dodge for leather interiors containing the laser-scribed designs." (Id. at ¶¶ 15-17.) TechnoLines charged GST a fee for its services that only "partially" covered its costs, expecting to eventually license its technology to GST to use GST's own plant. (Id. at ¶ 18.)

To that end, the parties began to negotiate a licensing agreement in or around December 2009. (Id. at ¶¶ 19, 21; Coghlan Decl. ¶ 5.) On December 14, 2009, Costin sent an email to a GST representative, which stated in pertinent part: "Per your request, please call Henry Coghlan, VP of R&D at Masonite, to initiate discussions regarding license agreements and royalties." (Email from D. Costin to P. Chvatal, dated Dec. 14, 2009, attached as Ex. A to Pls.' Resp.) At that time Coghlan was also the Vice President, Technology, for Echelon. (Coghlan Decl. ¶ 1.) Coghlan's office, which also served as Echelon's "principal office," was located in West Chicago, Illinois. (Id. at ¶¶ 1-2.) As far as the complaint and the parties' affidavits indicate, this is the first time that GST dealt with Echelon. GST and Echelon negotiated for several months by telephone and email. (Id. at ¶ 5-6; Compl. ¶ 21.) During that time Coghlan prepared, and submitted to GST, drafts of a Letter of Intent and a Non-Binding Term Sheet to serve as the basis for their negotiations. (Coghlan Decl. ¶ 5;

see also Letter of Intent and Non-Binding Term Sheet, attached to Coghlan Decl.) These documents, which the parties never executed, generally described the terms of a proposed agreement between Echelon and GST. (Id.) TechnoLines was not a party to the proposed agreement, and it did not directly participate in the negotiations. (Compl. ¶ 21 ("Throughout these negotiations, Defendant communicated solely with Echelon representatives in West Chicago, Illinois.").) But TechnoLines did, in early May 2010, host "technical visits" during which it demonstrated the laser-etching technology for GST personnel. (Id. at ¶ 22.) Later that same month GST stopped discussing the Laramie Longhorn project with Echelon and Technolines, even as it continued to work with TechnoLines on other projects. (Id. at ¶ 23.) TechnoLines subsequently learned that Dodge was marketing a Laramie Longhorn truck "bearing the exact same laser-etched designs that TechnoLines had developed for [GST], and which were the subject of the parties' negotiations." (Id. at ¶¶ 25-27.)

Plaintiffs have asserted claims for patent infringement (Counts I-IV), trade-secret misappropriation (Count V), breach of the Mutual Non-Disclosure Agreement (Count VI), and unjust enrichment (Count VII). GST has moved to dismiss the complaint for improper venue, or in the alternative, transfer the case to the Eastern District of Michigan.

## DISCUSSION

**A.   Legal Standard**

28 U.S.C. § 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." The patent venue statute is exclusive. <u>See</u> <u>Stonite Products Co. v. Melvin Lloyd Co.</u>, 315 U.S. 561, 565-66 (1942).  Even after more recent amendments, "[t]he <u>Stonite</u> rule remains in part, and to this day Section 1400(b) cannot be supplemented . . . by the statute permitting a claim to be brought in any district in which a substantial part of the events or omissions giving rise to the claim occurred."  Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3823 (3d Ed.); (<u>cf.</u> Pls.' Reply at 5-6 (arguing that they may establish venue under either the patent venue statute or the general venue statute, 28 U.S.C. § 1391.). However, the 1988 amendment to the general venue statute revised the definition of the term "resides" "[f]or purposes of venue under this chapter," which includes § 1400.  <u>See</u> 28 U.S.C. § 1391(c); <u>VE Holding Corp. v. Johnson Gas Appliance Co.</u>, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (concluding that, by its plain terms, the 1988 amendment to § 1391(c) redefined "resides" as it is used in § 1400).  A corporation "resides" for purposes of the patent venue statute "in any judicial district in which it is subject to

personal jurisdiction at the time the action is commenced." 28
U.S.C. § 1391(c).

Whether we have personal jurisdiction over GST with respect to
plaintiffs' patent-infringement claims is governed by Federal
Circuit law.  See Silent Drive, Inc. v. Strong Indus., Inc., 326
F.3d 1194, 1201 (Fed. Cir. 2003); see also U.S. Gypsum Co. v.
LaFarge North America, Inc., 508 F.Supp.2d 601, 641 (N.D. Ill.
2007).  Seventh Circuit law applies to the remaining counts because
they are not "intimately linked to patent law." Silent Drive, 326
F.3d at 1201.[1]  The parties have not requested an evidentiary
hearing, nor have they cited any material fact disputes that would
require one.  Cf. Hyatt Intern. Corp. v. Coco, 302 F.3d 707, 713
(7th Cir. 2002) (if the parties dispute material facts, then the
court "must hold an evidentiary hearing to resolve them").
Accordingly, a prima facie showing that GST is subject to personal
jurisdiction will suffice.  See Electronics For Imaging, Inc. v.
Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003); Tamburo v. Dworkin,
601 F.3d 693, 700 (7th Cir. 2010).  We accept all well-pleaded
allegations as true, and resolve any factual disputes in the
parties' affidavits in plaintiffs' favor. Electronics For Imaging,
340 F.3d at 1349; Tamburo, 601 F.3d at 700.

**B.  Plaintiffs' Patent Infringement Claims (Counts I-IV)**

---

[1] Neither side has acknowledged the distinction, for choice-of-law
purposes, between patent and non-patent claims.

Plaintiffs must show that GST is amenable to service process in this district and that exercising personal jurisdiction over it comports with due process. <u>Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.</u>, 603 F.3d 1364, 1368-69 (Fed. Cir. 2010). The Patent Act does not authorize nationwide service of process, <u>see</u> <u>Fitzsimmons v. Barton</u>, 589 F.2d 330, 333 n.2 (7th Cir. 1979), therefore we turn to Illinois' long-arm statute. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). Illinois' long-arm statute authorizes personal jurisdiction over a defendant who has committed a "tortious act" in Illinois. 735 ILCS 5/2-209(a)(2). It also permits "jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." <u>Id.</u> at 5/2-209(c); <u>see also</u> <u>Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.</u>, 623 F.3d 440, 443 (7th Cir. 2010) (there is "no operative difference" between the jurisdictional limits imposed by the Illinois and United States Constitutions). The analysis under this catch-all provision merges with the familiar "minimum contacts" due process analysis. <u>See</u> <u>N. A. Philips Corp. v. American Vending Sales, Inc.</u>, 35 F.3d 1576, 1580 (Fed. Cir. 1994); <u>see also</u> <u>Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement</u>, 326 U.S. 310, 316 (1945).

Plaintiffs effectively concede that GST's limited contacts with Illinois are insufficient to establish general personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (requiring "continuous and systematic" contacts with the forum state to confer general personal jurisdiction); see also Silent Drive, 326 F.3d at 1200. Turning to specific personal jurisdiction, the Federal Circuit applies a three-factor test: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." Nuance Communications, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

### 1. Personal Jurisdiction Based Upon GST's Telephone Calls and Emails to Echelon

GST's telephone calls and emails to Echelon during the parties' contract negotiations were purposefully directed at Echelon in Illinois. But plaintiffs' patent infringement claims do not "arise out of" or "relate to" those contacts. The Supreme Court has not defined "arise out of" or "relate to" in this context, and no consensus has emerged in the circuit courts. See Tamburo, 601 F.3d at 708-09 (discussing the different approaches adopted by other circuits). As far as we can tell, the Federal Circuit has not announced a formal test along the lines that other circuits have adopted. Cf. Mass. Sch. of Law at Andover, Inc. v.

Am. Bar. Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (requiring that the defendant's contacts proximately cause the plaintiff's injury); Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997) (requiring only "but for" causation). GST's allegedly infringing acts are loosely "related" to its negotiations with Echelon: GST sought to license the patents it is now accused of infringing. But a defendant's contacts and the plaintiff's claims are not "related," for jurisdictional purposes, simply because they involve the same or similar subject matter. This point is illustrated in Federal Circuit cases discussing personal jurisdiction in declaratory judgment suits against out-of-state patentees. The Federal Circuit has held that it would not comport with fair play and substantial justice to subject a patentee to personal jurisdiction based solely on cease-and-desist letters sent to accused infringers in the forum. See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). Besides the letters, the accused infringer must show that the patentee engaged in "other activities" related to patent enforcement in the forum. See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1334 (Fed. Cir. 2008). An exclusive license agreement with a third party in the forum state might be sufficient, depending on the nature of the agreement. Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1366 (Fed. Cir. 2006). Merely attempting to license patents to someone in the forum is insufficient. Id. ("[A]

defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there.") (citing <u>Hildebrand v. Steck Mfg. Company, Inc.</u>, 279 F.3d 1351, 1356 (Fed. Cir. 2002)).  The court has also held that a patentee's sales of its own patented products in the forum are insufficient: "What the patentee makes, uses, offers to sell, or imports is of no real relevance to the enforcement or defense of a patent, because 'the federal patent laws do not create any affirmative right to make, use, or sell anything.'"  <u>Avocent</u>, 552 F.3d at 1335 (quoting <u>Leatherman Tool Group, Inc. v. Cooper Indus., Inc.</u>, 131 F.3d 1011, 1015 (Fed. Cir. 1997)).  Failed attempts to license the relevant patents in the forum, and a patentee's sales of its own products there, are "related" to the declaratory judgment action in the same informal sense that the parties' failed license negotiations in this case are "related" to GST's alleged infringement.  The Federal Circuit authorities we have just discussed require more than that.  <u>See also</u> <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1278 (7th Cir. 1997) (rejecting a "hybrid" approach to general and specific jurisdiction aggregating all of the defendant's contacts with a specific plaintiff for purposes of establishing specific jurisdiction).  We conclude that plaintiffs' patent infringement claims do not "arise out of" or "relate to" GST's failed license negotiations with Echelon.

      2.    **Personal Jurisdiction Under <u>Calder v. Jones</u>, 465 U.S. 783 (1984).**

Plaintiffs argue that personal jurisdiction is appropriate in Illinois because that is where Echelon was injured by GST's patent infringement. (Pls.' Resp. at 7 (citing Janmark v. Reidy, 132 F.3d 1200 (7th Cir. 1997)).) In Janmark, a defendant located in California threatened to sue the plaintiff's customer in New Jersey for contributory copyright infringement. Id. at 1202. When the customer stopped doing business with the plaintiff, the plaintiff sued the defendant in Illinois (the plaintiff's home State) for tortious interference with prospective economic advantage. Id. The district court concluded that it lacked personal jurisdiction over the defendant, and our Court of Appeals reversed. Id. at 1203. The Janmark Court reasoned that the plaintiff's injury occurred in Illinois, where it was located, and therefore the tort occurred there, too. Id. at 1202 (The "tort was not complete (because no injury occurred) until Janmark's customer canceled the order; the injury and thus the tort occurred in Illinois."). The Janmark Court's analysis under § 2-209(a)(2) — the "tortious act" provision — is incompatible with Federal Circuit cases holding that patent infringement occurs where the infringing act takes place. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 (Fed. Cir. 1994); see also N. A. Philips, 35 F.3d at 1579 ("[T]he 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt."). But the Janmark Court went on to conclude that § 2-209(c) provided an independent basis for personal jurisdiction, citing the "express

aiming" test announced by the Supreme Court in <u>Calder v. Jones</u>, 465
U.S. 783 (1984). <u>See</u> <u>Janmark</u>, 132 F.3d at 1202-03; <u>see also</u> <u>N. A.</u>
<u>Phillips Corp.</u>, 35 F.3d at 1580 (analyzing personal jurisdiction
under both § 2-209(a)(2) and (c)).

The plaintiff in <u>Calder</u> alleged that she was libeled by a
newspaper article written and edited by the defendants in Florida.
<u>Calder</u>, 465 U.S. at 1484. She sued the defendants in California,
where she lived and worked, and where the article was circulated
(among other places). <u>Id.</u> Although the defendants' other contacts
with California were negligible, the Supreme Court concluded that
they were subject to personal jurisdiction in California:

> [Petitioners'] intentional, and allegedly tortious,
> actions were expressly aimed at California. Petitioner
> South wrote and petitioner Calder edited an article that
> they knew would have a potentially devastating impact
> upon respondent. And they knew that the brunt of the
> injury would be felt by respondent in the State in which
> she lives and works and in which the National Enquirer
> has its largest circulation. Under the circumstances,
> petitioners must "reasonably anticipate being haled into
> court there" to answer for the truth of the statements
> made in their article.

<u>Id.</u> at 789-90 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444
U.S. 286, 297 (1980)). The <u>Janmark</u> Court also relied on
<u>Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Ltd.</u>
<u>P'ship</u>, 34 F.3d 410 (7th Cir. 1994). In that case the owners of a
new Canadian Football League franchise in Baltimore sought to name
their team the "Baltimore CFL Colts." <u>Id.</u> at 411. The
Indianapolis Colts and the National Football League sued the new
team and the Canadian Football League for trademark infringement in

Indiana. <u>Id.</u> Applying <u>Calder</u>, the Court concluded that the plaintiffs' injury in Indiana, plus the fact that the defendants had "entered" (or planned to "enter") Indiana via nationally televised games, sufficed to establish personal jurisdiction in that forum. <u>Id.</u> at 412.

Plaintiffs have not cited, nor are we aware of, any Federal Circuit case applying <u>Calder</u>'s "express aiming" test to establish personal jurisdiction over an out-of-state defendant accused of patent infringement. But in light of <u>Beverly Hills</u> and <u>N.A. Phillips</u>, <u>see</u> <u>supra</u>, we do not believe that the Federal Circuit would construe <u>Calder</u> as broadly authorizing personal jurisdiction wherever the patentee is located. And despite language in <u>Janmark</u> and <u>Indianapolis Colts</u> that arguably supports such an expansive interpretation, our own Court of Appeals has recently construed those cases (and <u>Calder</u> itself) more narrowly. <u>See</u> <u>Tamburo</u>, 601 F.3d at 705; <u>uBid, Inc. v. The GoDaddy Group, Inc.</u>, 623 F.3d 421, 427 n.1 (7th Cir. 2010) ("<u>Calder</u> can be read as authorizing personal jurisdiction in the home state of the victim of almost any alleged intentional tort, but it need not and should not be read quite so broadly."); <u>see also</u> <u>Wallace v. Herron</u>, 778 F.2d 391, 394 (7th Cir. 1985) ("We do not believe that the Supreme Court, in <u>Calder</u>, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed a tort against the plaintiff."). There must be "something more" than

an injury in the forum to support personal jurisdiction: the plaintiff must also establish "tortious conduct <u>specifically directed</u> at the forum, making the forum the focal point of the tort." <u>Tamburo</u>, 601 F.3d 706 (emphasis added). The "focal point" of the libelous article in <u>Calder</u> was the location where the subject lived and worked. <u>Calder</u>, 465 U.S. at 789-90. In <u>Janmark</u>, the <u>Tamburo</u> Court noted, the defendant called the plaintiffs' customer in New Jersey "with the purpose of interfering with sales originating in Illinois." <u>Tamburo</u>, 601 F.3d at 706; <u>see also</u> <u>Dudnikov v. Chalk & Vermilion Fine Arts, Inc.</u>, 514 F.3d 1063, 1075 (10th Cir. 2008) (likening an analogous fact pattern to a bank shot in basketball: aimed at the backboard, but intended for the hoop). In <u>Tamburo</u> itself, the plaintiff accused the defendants of publishing false and defamatory statements on public websites and "blast emails." <u>Id.</u> "[A]lthough they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." <u>Id.</u> (quoting <u>Calder</u>, 465 U.S. at 789-90). The Court concluded that this was sufficient to establish personal jurisdiction.

The Federal Circuit's analysis in <u>Silent Drive</u> is consistent with this view of <u>Calder</u>. Silent Drive, Inc. collaborated with a third party to create a "trailing axle" (a truck suspension system designed to increase payload capacity). <u>Id.</u> at 1197-98. The

<u>Silent Drive</u> defendants sued the third party (but not Silent Drive) in Texas state court alleging that it had used the defendants' trade secrets to develop the axle. <u>Id.</u> at 1198. After finding for the <u>Silent Drive</u> defendants, the Texas state court entered a broad injunction prohibiting the state-court defendants and Silent Drive, which the court identified by name in its order, from using, manufacturing, and/or selling the product. <u>Id.</u> The <u>Silent Drive</u> defendants sent copies of the injunction order to Silent Drive in Iowa and to Silent Drive's customers outside the State. <u>Id.</u> at 1198-99. Applying <u>Calder</u> and Eighth Circuit authority, the Federal Circuit concluded that the district court had personal jurisdiction over the defendants with respect to Silent Drive's claim that it was not bound by the Texas court's injunction:

> Silent Drive has specifically pled that the defendants' activities with respect to the enforcement of the Texas injunction were all "expressly aimed" at Iowa, and that [the defendants] "knew" that the activities "would have [the] potentially devastating effect[s]" of inhibiting Silent Drive from producing the MAXLE and its customers from buying it.

<u>Id.</u> at 1204 (quoting <u>Calder</u>, 465 U.S. at 789). The <u>Silent Drive</u> court cited <u>Janmark</u> and <u>Indianapolis Colts</u> for the proposition that personal jurisdiction is appropriate in the forum where the plaintiff is injured. <u>See</u> <u>Silent Drive</u>, 326 F.3d at 1206. But the facts in <u>Silent Drive</u> clearly established "something more" than injury in the forum. The defendants' letters threatening legal

action against Silent Drive and its customers were specifically directed at Silent Drive in Iowa.

Returning to our own facts, Mexico is the only location specifically identified in the complaint as the situs of an infringing act. (Compl. ¶¶ 31, 36, 41, 46 (alleging on information and belief that GST is "practicing" the invention at a manufacturing facility in Mexico). The complaint further alleges that GST sells, offers for sale, imports, and/or uses the infringing product "in the United States." (Id.) GST denies that it "sells products" in Illinois, (Jeske Aff. ¶ 4), and plaintiffs have not cited any contrary evidence. GST allegedly violated Echelon's right to exclude others from making and selling products covered by the patents, but both the "tort" and the "economic loss" occurred outside the State. See Beverly Hills, 21 F.3d at 1571 ("Economic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there."). GST knew that Echelon was located in Illinois, and that it had obtained the right from TechnoLines to license the relevant patents. But this knowledge does not establish that the sales were "aimed" at Illinois rather than the location(s) where the infringing acts occurred. "There is an important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum." Narco Avionics, Inc. v. Sportsman's Market, Inc., 792 F.Supp. 398, 408 (E.D. Pa. 1992) (concluding that Calder did not support

personal jurisdiction over a foreign defendant sued in the patentee's home state). Our Court of Appeals' decision in <u>Wallace</u> is instructive here. In <u>Wallace</u>, the plaintiff sued the defendants in Indiana, his home State, for malicious prosecution based on a lawsuit that the defendants had previously filed against him in California. <u>Wallace</u>, 778 F.2d at 394. The plaintiff argued that <u>Calder</u> supported personal jurisdiction because the defendants had served interrogatories and document requests, and had caused the plaintiff to respond to complaints, in Indiana. <u>See</u> <u>id.</u> at 394. Our Court of Appeals disagreed, concluding that the defendants "took no action that created the necessary connection with Indiana for them to reasonably anticipate being haled into court there." <u>Id.</u> at 395. The defendants in <u>Wallace</u> knew that the victim of their malicious prosecution was located in Indiana, but that did not make Indiana "the focal point" of the tort.

Finally, GST's emails and telephone calls to Echelon do not constitute "entry" into Illinois in the relevant sense. In <u>Indianapolis Colts</u>, television broadcasts in Indiana threatened to cause, or exacerbate, the injury the plaintiffs hoped to prevent by seeking an injunction. <u>Indianapolis Colts</u>, 34 F.3d at 412 (noting that Indiana had "the largest concentration of consumers likely to be confused by broadcasts implying some affiliation between the Indianapolis Colts and the Baltimore team . . . ."); <u>see also</u> <u>Nerds on Call</u>, 598 F.Supp.2d at 920-21. As we discussed earlier, GST's emails and telephone calls are only superficially related to GST's

alleged infringement. In this sense, too, this case is similar to Wallace. The Wallace defendants' attenuated contacts with Illinois were "related," in an informal sense, to the lawsuit that formed the basis for the plaintiff's malicious prosecution claim. But that did not mean that the defendant's tortious conduct was "specifically directed" at the plaintiff in Illinois. Tamburo, 601 F.3d at 706.

In sum, we conclude that plaintiffs have not made a prima facie showing that GST is subject to personal jurisdiction in Illinois with respect to plaintiffs' patent infringement claims.[2]

## C. Plaintiffs' Remaining Claims

In Silent Drive, after concluding that the district court had personal jurisdiction over the plaintiff's due-process claim, the court exercised pendent personal jurisdiction over the plaintiff's declaratory judgment claim for non-infringement and patent invalidity. Silent Drive, 326 F.3d at 1206. Pendent personal jurisdiction would appropriate in this case if: (1) we had personal jurisdiction over a non-patent, state-law claim under Seventh Circuit law; and (2) the patent and non-patent claims arose out of a common nucleus of operative fact. Id.[3] Our analysis of

_____

[2] Because we conclude that plaintiffs have not established contacts sufficient to support specific personal jurisdiction, it is unnecessary to address whether exercising jurisdiction would comply with fair play and substantial justice.

[3] Silent Drive did not specifically address venue, but as we understand that case, pendant personal jurisdiction over a patent law claim would suffice for 28 U.S.C. § 1400(b)'s purposes.

plaintiffs' patent-infringement claims does not foreclose our finding that these elements are satisfied. However, we must have an independent basis for exercising subject matter jurisdiction over the non-patent claims. See id. at 1202-03 (requiring that the plaintiff allege "independent subject matter jurisdiction" over the non-patent claims); Avocent, 552 F.3d at 1340-41 ("[B]ecause the district court did not have personal jurisdiction over Aten International with respect to the patent and Lanham Act claims, it correctly dismissed Avocent's state law claim for intentional interference with business or contractual relations."); see also Leister v. Dovetail, Inc., 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."). Plaintiffs allege that we have subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal-question jurisdiction) and 1338 (patent jurisdiction). (Compl. ¶ 3.) They have not alleged diversity jurisdiction under 28 U.S.C. § 1332, and there is not enough information in the complaint to conclude that subject matter jurisdiction is appropriate under that statute. On the other hand, they have not alleged facts clearly indicating that diversity jurisdiction is not available. It seems likely that more than $75,000 is in controversy, and the parties may be diverse, depending on the citizenship of the plaintiffs' limited partners. Because we are dismissing plaintiffs' only federal claims, we will dismiss the

remaining counts without prejudice. <u>See</u> <u>Leister</u>, 546 F.3d at 882. But we will give the plaintiffs an opportunity to amend their complaint to allege diversity jurisdiction. If they choose to amend their complaint, GST may then decide whether to renew its personal jurisdiction and venue objections.

**CONCLUSION**

Defendant's motion to dismiss plaintiffs' complaint (17) is granted and plaintiffs' complaint is dismissed without prejudice. By July 20, 2011, the plaintiffs may file an amended complaint asserting diversity jurisdiction. If no amended complaint is filed, we will dismiss this case without prejudice to the plaintiffs refiling in a proper forum.


DATE:     June 30, 2011


ENTER:    _____
          John F. Grady, United States District Judge